IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIONELL PAYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11 C 6623 |
| ) | |
| SGT. RICHARD MAHER, OFCR. MIGUEL ) | |
| BAUTISTA, OFCR. PETER MEDINA, ) | |
| JERRY HENDERSON, WILLIAM DENTON, ) | |
| and the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dionell Payne has sued three Chicago police officers (Sergeant Richard Maher and Officers Peter Medina and Miguel Bautista), two civilians (William Denton and Jerry Henderson), and the City of Chicago. Payne alleges false arrest, malicious prosecution, denial of due process rights, intentional infliction of emotional distress (IIED), and conspiracy. Payne was originally represented by counsel. Counsel withdrew after conducting a significant amount of discovery, and Payne then proceeded with the case *pro se*. Denton and Henderson never responded to the complaint after being served with summons, so the Court held them in default but deferred entry of a judgment against them pending resolution of the claims against the officers and the City. Those defendants have now moved for summary judgment.

**Facts**

Payne alleges, and he testified, that while on the west side of Chicago on

February 8, 2010, he was accosted by Denton and Henderson, who told him to empty his pockets and then beat him and threw him to the ground when he refused.  Payne suffered severe injuries in the altercation.  The defendant officers came to the scene and found Denton and Henderson still there, with Payne lying on the ground and asking for an ambulance.

Maher, the first officer to arrive at the scene, testified that he saw Payne lying on the ground and called for an ambulance.[1]  He then interviewed Denton and Henderson, who reported that they had come upon Payne getting out of a vehicle that belonged to one of them, holding a toolbox that had been in the vehicle.  They asked Payne what he was doing, and he brandished a pocket knife and said he was going to leave with the toolbox.  They told Maher that they disarmed Payne and threw him to the ground, and Denton called 911.  Maher testified that both Denton and Henderson appeared upset.  Maher also testified that he saw a toolbox and an orange pocket knife sitting on the trunk of the vehicle.

Two other officers then arrived; they are not named as defendants.  Maher told Payne that he was going to be arrested and directed one of the officers to stay with him.  Officers Bautista and Medina then arrived.  Maher told them what Denton and Henderson had reported and told the officers to reinterview them.  Medina and Bautista interviewed them separately, and they reported essentially what they had told Maher.

At the police station, Denton and Henderson gave similar statements to a detective and Cook County prosecutors, who approved a felony charge against Payne.  The officers arrested Payne, and he was charged with attempted armed robbery.  He

---

[1] Payne makes no claim against the officers or the City for denial of or delay in receiving medical care.

spent about eight months in jail, a good deal of it in the hospital. The charges against him were dismissed (nolle prossed) in September 2010. He has been unable to work since that time due to the injuries he suffered. Payne filed this suit one year to the day after the charges against him were dismissed.

Payne contends that Denton and Henderson fabricated their story. He denies having had a knife in his possession and denies having attempted to rob Denton and Henderson. He contends that the police did an inadequate investigation before arresting and charging him. Payne testified during his deposition that he did not speak to any police while at the scene, *see* Payne Dep. at 63, but he recalls asking an officer at the hospital where he was taken why he was being guarded, and when told he was under arrest for robbery, he disputed the basis for the charge. *See id.* at 60-61.

**Plaintiff's claims**

In count 1 of his complaint, Payne asserts a claim of false arrest against Maher, Bautista, and Medina under 42 U.S.C. § 1983. Count 2 is a claim against the individual defendants under section 1983 and state law for malicious prosecution (prosecution without probable cause). Count 3 is a state-law IIED claim against the individual defendants. Count 4 is a conspiracy claim against the individual defendants under section 1983. Count 5 is a due process claim under section 1983 against the individual defendants for fabricating evidence and withholding exculpatory evidence. Count 6 is claim against the City for indemnification under 745 ILCS 10/9-102 and based on respondeat superior.

For the most part, Payne's claims depend on his contention that he was arrested without probable cause. Defendants argue that probable cause existed, or alternatively

3

they are entitled to qualified immunity; Payne cannot assert a malicious prosecution claim under 42 U.S.C. § 1983; there is no evidence of a conspiracy; the due process claim cannot succeed because the charge against Payne was dropped before trial; and the IIED claim is time-barred or alternatively fails on the merits.

**Discussion**

Because the defendants have moved for summary judgment, the Court views the facts in the light most favorable to Payne and draws reasonable inferences in his favor. Summary judgment is appropriate only if the defendants show there is no genuine issue of material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Payne's claims, as the Court has noted, depend for the most part on whether he was falsely arrested. That, in turn, depends on whether a reasonable jury could find that probable cause was lacking. Probable cause exists if the facts and circumstances known to the officer at the time were sufficient to warrant a prudent person in believing that the suspect had committed, was committing, or was about to commit a crime. *See, e.g., Jones v. City of Elkhart*, 707 F.3d 1107, 1114 (7th Cir. 2013).

The officers testified that Denton and Henderson said that Payne had attempted to rob them at knifepoint and that they had fought back and fended him off. At this very basic threshold level, there is no genuine factual dispute over what Denton and Henderson said. The officers' testimony regarding what they said is unrebutted; Payne does not claim to have overheard what they said, and he has no other witnesses to their statements.

If there was nothing more to it than this, the case would be an easy one. The

4

Seventh Circuit has stated that

> The existence of probable cause does not depend on the truth of a complaint of wrongdoing. So long as an officer reasonably believes the putative victim of or eyewitness to a crime is telling the truth, he may rely on the information provided to him by such persons in deciding to make an arrest, without having to conduct an independent investigation into their accounts.

*Williamson v. Curran*, 713 F.3d 432, 441 (7th Cir. 2013).

But it is not actually that simple. The issue of whether an officer reasonably believes a particular alleged victim or eyewitness depends on the circumstances. Given the circumstances here, any reasonable police officer who heard Denton and Henderson's story would ask the obvious question—where's the knife? All of those involved (Denton, Henderson, and Payne) were still at the scene when the police arrived, and Payne was lying on the ground, semi-conscious. Thus the knife, if there actually was one, should have been there too. If there was no knife, then it is doubtful whether one reasonably could rely on Denton and Henderson's report without more.

Sergeant Maher testified that he saw a knife, sitting on the trunk of the vehicle next to the toolbox. But although officers Medina and Bautista said they saw the toolbox, neither of them saw a knife, either on the trunk or elsewhere. And no knife was ever inventoried. There is, of course, more than one possible explanation for this—perhaps a bystander sneaked away with the knife?—but one possible explanation, which a reasonable jury could accept, is that Maher never actually saw one. There was no knife to be found when Bautista and Medina arrived, just a few moments after Maher, and looked in the very spot where Maher claimed he saw it. Given this and the fact that no knife was ever found, a reasonable jury could find Maher to lack credibility and that in fact he saw no knife.

5

A jury that believed that Maher never saw a knife likewise could reasonably believe that there was never a knife to begin with. And because the police were on the scene so quickly and all of the participants were still present, if there was no knife, a critical part of Denton and Henderson's story—the very part on which Payne's arrest and charges were based—falls apart.

Given the circumstances, a jury that believed there was no knife on the scene reasonably could find that probable cause was lacking. Although an officer need not conduct a detailed investigation at the scene of a crime, he "may not close his eyes to facts that would clarify the situation." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Denton and Henderson told a story that, to be believed, should have been corroborated by the presence of a knife. As the Court has indicated, the events had happened only minutes earlier; all of the participants were still there; and the claimed perpetrator was lying on the ground, injured. If there was no knife and no other explanation for its absence (and, in fact, none is offered), then blindly believing Denton and Henderson would have amounted to the officers "clos[ing] [their] eyes to facts that would clarify the situation" and that, indeed, would disprove Denton and Henderson's story.

For these reasons, the Court concludes that a reasonable jury could find the absence of probable cause. This, by itself, is sufficient to require the denial of summary judgment on Payne's state law malicious prosecution claim contained in Count 2. On the other hand, the section 1983 malicious prosecution claim in Count 2 cannot survive, because no such federal claim exists, except possibly in circumstances that are not present here. *See, e.g., Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011).

6

The police officer defendants argue in the alternative that they are entitled to qualified immunity and thus are still entitled to summary judgment on Count 1, Payne's section 1983 false arrest claim. This is a separate question from whether there was probable cause. "Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known." *Fleming v. Livingston Cty.*, 674 F.3d 874, 879 (7th Cir. 2012) (internal quotation marks omitted). In the present context, an officer is entitled to qualified immunity despite the absence of probable cause if "a reasonable officer could have mistakenly believed that probable cause existed." *Id.* at 880 (internal quotation marks omitted). "Thus, as long as [defendants] reasonably, albeit possibly mistakenly, believed that probable cause existed to arrest Payne, then [defendants are] entitled to qualified immunity." *Id.* This standard is met if "a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the [defendant] could have reasonably believed that probable cause existed in light of well-established law." *Id.* (internal quotation marks omitted).

As the Court has stated, the evidence reasonably supports a conclusion that Denton and Henderson's claim about being attacked by Payne was undermined by the absence of the knife they said Payne wielded. The Court acknowledges that the evidence tends to show it was Denton or Henderson who called the police in the first place. But if the police arrived on the scene with one man on the ground injured, two standing there uninjured and saying they had fought with and subdued the man lying on the ground, and a state of affairs that refuted their claim that the man had brandished a knife, a reasonable officer could not have reasonably believed, without more, that there

7

was probable cause to arrest or charge Payne. In short, the same factual disputes that preclude a finding on summary judgment that there was probable cause likewise preclude entry of summary judgment based on qualified immunity. The Court acknowledges that the qualified immunity determination is one made by the Court, not the jury, and it is prepared to revisit the point at trial if requested by defendants.

The defendants are, however, entitled to summary judgment on Payne's remaining claims. There is no evidence to support a claim of conspiracy (Count 4). Conspiracy requires evidence from which an agreement can be inferred, *see, e.g., Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000), and there is none in this case. Payne likewise cannot sustain the due process / withholding of exculpatory evidence claim contained in Count 5, because he was not fully prosecuted and the charges against him were dropped before trial. *See Ray*, 629 F.3d at 664.

In addition, the IIED claim in Count 3 is time-barred, as defendants argue. A one-year limitation period governs this claim. *See* 745 ILCS 10/8-101. Defendants argue that this claim accrued on February 2, 2010, the date of Payne's arrest, and Payne offers no basis to find the claim accrued later. Because Payne did not file suit until September 21, 2011, the IIED claim is untimely. (The Court notes that the same is not true of Payne's state law malicious prosecution claim contained in Count 2, which unlike the IIED claim did not accrue until the charges against him were dropped on September 21, 2010, exactly one year before he filed suit.)

Finally, count 6, Payne's indemnification / respondeat superior claim against the City, survives due to the fact that there are claims still pending against the police officer defendants for actions within the scope of their employment with the City.

8

**Conclusion**

For the reasons stated above, the Court grants summary judgment in favor of defendants on Counts 3, 4, 5, and the section 1983 malicious prosecution claim in Count 2, but denies defendants' motion for summary judgment as to Counts 1, 6, and the state law malicious prosecution claim in Count 2. The Court intends to appoint counsel to represent Payne for the remaining proceedings in this case.[2] The case is set for a status hearing on March 3, 2014 at 9:15 a.m., in chambers (Room 2188). Defendants' counsel are directed to make arrangements for plaintiff to participate by telephone.

                                                        MATTHEW F. KENNELLY
                                                        United States District Judge

Date: February 18, 2014

---

[2] The Court notes that it was disclosed at some point when or after Payne's counsel withdrew that defendants' counsel had sent a letter threatening to move for sanctions, including Rule 11 sanctions against counsel, if Payne did not drop the case. The Court has not seen the letter and thus is not aware of its particulars, but given what the Court has now seen of the evidence, a threat of Rule 11 sanctions against counsel does not appear to be well-grounded.