# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DIONELL PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11 C 6623 |
| | ) | |
| SGT. RICHARD MAHER, OFCR. MIGUEL | ) | |
| BAUTISTA, OFCR. PETER MEDINA, | ) | |
| JERRY HENDERSON, WILLIAM DENTON, | ) | |
| and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2011, Dionell Payne sued three Chicago police officers (Sergeant Richard

Maher and Officers Peter Medina and Miguel Bautista), two civilians (William Denton

and Jerry Henderson), and the City of Chicago. The case concerned Payne's arrest

and prosecution on a charge of attempted armed robbery. Denton and Henderson were

the alleged victims who made the complaint against Payne; Maher, Medina, and

Bautista participated in arresting and charging Payne. Payne asserted claims of false

arrest, malicious prosecution, denial of due process rights, intentional infliction of

emotional distress, and conspiracy.

The police officer defendants moved for summary judgment in 2013. The Court

granted summary judgment in their favor on all of Payne's claims except his section

1983 false arrest claim and his state law malicious prosecution claim. Those two claims

proceeded to trial in November 2014, and the jury returned a verdict in favor of the

police officer defendants on both claims.  Judgment by default was later entered against Denton and Henderson.

Payne has now moved for a new trial pursuant to Federal Rule of Civil Procedure 59 based on evidence that he contends was improperly admitted.  For their part, the police officer defendants (from here on in, "defendants") have petitioned the Court to award costs incurred during the litigation pursuant to Federal Rule of Civil Procedure 54(d)(1).  The Court denies Payne's motion for a new trial but declines to award costs.

## A.     Motion for a new trial

Payne argues that the Court should grant him a new trial based on evidence that he contends was improperly admitted.  A new trial is appropriate under Federal Rule of Civil Procedure 59(a) "if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party."  *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014).  A district court has "broad latitude to control the admission of evidence."  *United States v. Calabrese*, 572 F.3d 362, 368 (7th Cir. 2009).  Even if evidence was improperly admitted, a court should grant a new trial only in "extraordinary situations" where the "the improperly admitted evidence had a substantial influence over the jury, and the result reached was inconsistent with substantial justice."  *Shick v. Ill. Dep't of Human Servs.*, 307 F.3d 605, 611 (7th Cir. 2002).

As a threshold matter, defendants contend that Payne failed to request a limiting instruction and, in so doing, "waived any right to now claim that evidence was prejudicial."  Defs.' Resp. to Pl.'s Mot. for a New Trial at 3.  The cases defendants cite for this proposition, however, involved situations in which the party refused a limiting instruction that was offered by the trial court.  *See Common v. City of Chicago*, 661 F.3d

2

940, 946 (7th Cir. 2011) (noting that the plaintiff chose to "forego the limiting instruction" as a "legal strategy," and observing that "[a] party who declines the opportunity to have a limiting instruction, waives the right to claim that he has been prejudiced by evidence that is otherwise relevant and admissible"); *Goetz v. Cappelen*, 946 F.2d 511, 514 (7th Cir. 1991) ("Having declined the opportunity to minimize any potential prejudice, defendants cannot now complain that they are entitled to a new trial. In other words, the defendants cannot have it both ways—the defendants cannot refuse a limiting instruction and then claim on appeal that the evidence was unfairly prejudicial."). Here, by contrast, Payne did not refuse a limiting instruction that was offered to him. Rather, he simply did not request one. *Common* and *Goetz* are therefore inapposite. Payne timely filed motions *in limine*, and because the Court definitively ruled on the motions, his objections to admitting the evidence were preserved. *See United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008) ("If the pretrial ruling is definitive . . . no trial objection is necessary to preserve the objection for review.").

Payne contends that two items of evidence were improperly admitted: evidence of a threat he made to a witness and evidence of his gang affiliation. The threat evidence was offered, in part, to rebut Payne's claimed damages; both items of evidence were also offered to show that the criminal proceedings against Payne were not terminated in a manner indicative of his innocence. In Illinois, "a plaintiff can not [sic] recover for malicious prosecution unless he shows that the criminal proceeding at issue was terminated in his favor." *Logan v. Caterpillar*, *Inc.*, 246 F.3d 912, 924 (7th Cir. 2001). When "a prosecutor formally abandons the proceeding via a *nolle prosequi*"—as here—the criminal proceeding is terminated "in favor of the

3

accused . . . unless the abandonment is for reasons not indicative of the innocence of the accused." *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1131 (7th Cir. 2012) (quoting *Swick v. Liautaud*, 169 Ill. 2d 504, 513, 662 N.E.2d 1238, 1242-43 (1996)). "[M]isconduct on the part of the accused for the purpose of preventing trial," as well as "the impossibility or impracticability of bringing the accused to trial," can suggest that abandonment of the proceedings is not indicative of innocence. *Swick*, 169 Ill. 2d at 513, 662 N.E.2d at 1243. "[T]he unavailability of a key witness" can also suggest "that the prosecutors dropped [the] case for some reason not indicative of innocence." *Northfield Ins. Co.*, 701 F.3d at 1132.

### 1. Evidence of threatening remark

Payne allegedly made a threatening remark to an officer during the state court criminal proceeding on the attempted armed robbery charge. Although that charge was dropped, Payne pled guilty to intimidating a witness. The Court admitted evidence of the threatening remark but excluded evidence of the plea and conviction. Payne argues that evidence of the remark was not relevant and that even if it was relevant, it was unduly prejudicial.

"Relevant evidence is generally admissible under Federal Rule of Evidence 402, but may be excluded if it is unduly prejudicial." *United States v. Molton*, 743 F.3d 479, 482 (7th Cir. 2014). Relevant evidence is unduly prejudicial "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

Admitting this evidence was proper. First of all, the evidence reasonably could be understood as shedding light on the circumstances under which the attempted armed robbery charged against Payne was dismissed. But that aside, the evidence

was relevant on the question of damages. Payne contended that he was innocent of the attempted armed robbery charge. He expressly advanced this contention during his testimony on direct examination and in closing argument. *See* Nov. 12, 2014 Tr. 228, 238, 240, 242; Nov. 14, 2014 Tr. 608-09. And, perhaps more significantly for present purposes, he expressly tied his claim for damages to his innocence and the fact that he had been wrongly accused. *See* Nov. 12, 2014 Tr. 238 ("Q: . . . [C]an you describe what your day-to-day life [while incarcerated] was like? A: . . . Livid, you know, locked up for something that I know I didn't do. Mad at the justice system because I felt at the time I was charged it failed me. . . ."), 242 ("Q: Did knowing that you'd been wrongly accused of a crime, did that affect your moods at all? A: Yes, it did. It kind of put me in an anti-sociable way, didn't want to trust anybody, didn't know who to trust. . . . Just not having trust in the system or the people that I was around."), 608-09 (closing argument; asking the jury to consider Payne's innocence in determining his damages). This was a viable strategy; a reasonable jury certainly could find that an innocent person wrongly incarcerated would suffer a greater degree of emotional anguish due to his innocence. But by making this contention, Payne put at issue his guilt on the underlying charge. That, without more, made it appropriate for defendants to challenge his claim of innocence. The Court considered this in concluding, at the final pretrial conference, that evidence of Payne's guilt was admissible because, "if nothing else, it would affect the damages." Oct. 9, 2014 Tr. 22.

Evidence regarding Payne's attempt to intimidate a witness during the state criminal proceedings on the attempted robbery charge was admissible as tending to show his guilt on that charge. As the Court noted in ruling on the motions *in limine*, it is

a "widely recognized principle that a defendant's attempts to intimidate potential witnesses are probative of his consciousness of guilt." *United States v. Mokol*, 646 F.3d 479, 483 (7th Cir. 2011); *see also United States v. Harmon*, 721 F.3d 877, 884 (7th Cir. 2013); *United States v. Blake*, 286 F. App'x 337, 340 (7th Cir. 2008) (evidence of threat was "highly probative" of consciousness of guilt). Evidence that Payne had intimated a witness "raise[d] an inference of consciousness of guilt[,] which raise[d] an inference of actual guilt." *Harmon*, 721 F.3d at 884.

This evidence, to be sure, was prejudicial to Payne, but the prejudice was not unfair in the way that Federal Rule of Evidence 403 uses that term. Payne put his innocence into play in prosecuting his claims before the jury, and thus it was fair for defendants to attempt to rebut that contention. The Court does not mean by this to suggest that any time a plaintiff in a false arrest, malicious prosecution, or similar case claims he is innocent to support his claim for damages, he opens the door to any and all available evidence of guilt; other rules of admissibility, including Rule 403, still apply. But this evidence was, under the circumstances, particularly probative and the probative value was not significantly outweighed by danger of unfair prejudice.[1]

Payne also argues that defendants used this evidence to attack his character. But defendants referenced the threat only three times over the course of their opening and closing arguments. In their opening statement, defendants described the evidence that the jury would hear about the threat; they did not use this evidence to mount a broader character attack. *See* Nov. 12, 2014 Tr. 182-83. And although defendants did

---

[1] Because the Court concludes the evidence was admissible to rebut Payne's express claim of innocence, it need not address whether, among other things, simply asserting a claim of malicious prosecution, false arrest, or the like puts in issue the plaintiff's innocence or guilt.

not use the phrase "consciousness of guilt" in their closing argument, they referenced

the threat in the context of describing the circumstances surrounding the *nolle prosequi*

of the attempted robbery charge—that is, to explain why these circumstances were not

"indicative of Mr. Payne's innocence."  Nov. 14, 2014 Tr. 626.  Separately, defendants

argued that the fact that Payne denied making the threat (despite pleading guilty to

intimidation of a witness) undermined his credibility.[2]  *Id.* 615-16.  These limited

references to the threat do not amount to a character attack on Payne.  Finally, even if

the way defense counsel used the remark could be claimed to have been unfairly

prejudicial, Payne forfeited this point by failing to object at the time the arguments were

made.  *See Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008).

**2.    Evidence of gang affiliation**

Payne also contends that the Court improperly admitted evidence of his gang

affiliation.  The Court permitted this evidence for the narrow purpose of showing why

one of the complaining witnesses, William Denton, had stopped cooperating with the

state criminal prosecution and thus why the *nolle prosequi* of the state criminal charge

was not indicative of Payne's innocence.  Specifically, the Court allowed defendants to

present Denton's deposition testimony that he no longer wanted to participate in the

case because Payne "was once somebody" and he "didn't want any problems with the

guy because he has supposedly gang ties."  Nov. 13, 2014 Tr. 497.  Aside from an

oblique reference in closing argument (the defense referenced Payne's "potential[] ties

to some unsavory people"), Nov. 14, 2014 Tr.  626, no other reference was made to

---

[2] Although the Court ruled at the pretrial conference that evidence of the conviction was
inadmissible, Payne opened the door to this evidence at trial by denying that he made
the threat.  This came as no surprise; the Court specifically warned of this possibility at
the pretrial conference.  *See* Oct. 9, 2014 Tr. 22.

Payne's gang affiliation during the trial.

Although "there is substantial risk of unfair prejudice attached to gang affiliation evidence . . . under appropriate circumstances, gang evidence has probative value warranting its admission over claims of prejudice." *United States v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009). The Seventh Circuit has "repeatedly upheld the admission of gang affiliation evidence when it is more probative than prejudicial," including "for the purpose of showing motive." *United States v. Molton*, 743 F.3d 479, 482-83 (7th Cir. 2014); *see also United States v. Ozuna*, 674 F.3d 677, 681 (7th Cir. 2012) ("[T]he evidence of gang affiliation was admissible, from the beginning, to show bias, interest, or motive.").

The evidence at issue here had "probative value warranting its admission over claims of prejudice." *Alviar*, 573 F.3d at 536. The evidence was probative because it suggested that Denton stopped cooperating because he was afraid of Payne, not because his account of the incident was false. Thus, the evidence went to a key disputed issue on Payne's malicious prosecution claim: whether the *nolle prosequi* was indicative of his innocence. Additionally, any unfair prejudice to Payne was minimal. The evidence did not establish that Payne actually was in a gang, but only that Denton had heard that he once had been. Moreover, defendants did not use the evidence to attack Payne's character, and his potential gang affiliation was only referenced twice during the trial. Because the probative value of admitting Denton's deposition testimony outweighed the risk of unfair prejudice, admitting the evidence was proper.

### 3. Conclusion

The Court concludes that both items of evidence challenged by Payne were

properly admitted.  Even if the evidence was improperly admitted, defendants' use of

this evidence was highly circumscribed, and there was ample evidence in the record for

the jury to return a verdict in favor of defendants.  Accordingly, the evidence did not

have "a substantial influence over the jury" and the result reached was not "inconsistent

with substantial justice."  *Shick*, 307 F.3d at 611.  The Court therefore denies Payne's

motion for a new trial.

## B.      Bill of costs

Because Payne is not entitled to a new trial, the Court turns to defendants'

request for an award of costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order

provides otherwise, costs—other than attorney's fees—should be allowed to the

prevailing party."  The rule creates a "presumption that the losing party will pay costs."

*Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006).  Although the Court may

exercise discretion in awarding costs, "the discretion is narrowly confined because of

the strong presumption created by Rule 54(d)(1) that the prevailing party will recover

costs."  *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997).

The Seventh Circuit has recognized "only two situations in which the denial of

costs might be warranted:  the first involves misconduct of the party seeking costs, and

the second involves a pragmatic exercise of discretion to deny or reduce a costs order if

the losing party is indigent."  *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir.

2003).  Payne argues that the Court should deny costs because he is indigent.  To

establish indigence, Payne must provide evidence sufficient to show not only that he is

currently incapable of paying costs, "but also that [he] will be incapable of paying them

in the future." *Rivera*, 469 F.3d at 636. The Court also "consider[s] the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised." *Id.* at 635.

Payne is currently incapable of paying costs. He does not have any assets from which he can pay costs; it is undisputed that he does not own a home or any other real property aside from a used car. Payne also does not have any source of income that would enable him to pay costs. He is currently incarcerated and resides in Cook County Jail's Residential Treatment Unit. He does not have a job at the jail, and the balance in his inmate trust account is negligible.

It is also not at all likely that Payne will be able to pay the claimed costs in the future. As defendants' counsel pointed out at a sidebar during the trial, Payne currently faces additional serious criminal charges. *See* Nov. 12, 2014 Tr. 248, 256. If and when he is released from jail, he will have difficulty finding work because he is confined to a wheelchair (which precludes him from returning to his former employment as a housepainter) and because he has a criminal record. Payne may be entitled to Social Security disability payments, but that is not enough to suggest that he will be able to pay costs in the future. *See Rivera*, 469 F.3d at 636 (observing that plaintiff in another case who "was an unemployed single parent to three children, who suffered from severe mental health problems, and received $840 a month in Social Security payments" could not return to his "former occupation as a truck driver" and "had proven an inability to pay costs in the future"). Moreover, because Payne is now divorced, much of anything he is able to earn is likely to be taken for child and spousal support.

Defendants do not dispute this description of Payne's financial situation. Instead,

they argue that Payne will be able to pay costs in the future because the Court awarded Payne $500,000 in damages on entry of a default judgment against William Denton and Jerry Henderson.  In reality, however, Payne will not be able to collect on this judgment. Neither of them retained counsel to defend the charges, a good indication that they believed they were judgment-proof.  And neither of them appeared at trial despite being subpoenaed.  The odds are overwhelming that any attempt by Payne to collect on the default judgment will be futile.  The Court also notes that Payne's continued incarceration—as defense counsel noted during the trial, Payne is a recidivist offender who has "been in and out of jail his whole life"—likely would stymie any effort he might want to make to attempt collection.  The Court concludes that the default judgment against Denton and Henderson does not suggest that Payne will be able to pay costs in the future.

Payne has provided sufficient evidence to establish that he is indigent. Additionally, though Payne lost at trial, his claims were at least colorable.  The Court therefore exercises its discretion to deny an award of costs.  Because the Court denies an award of costs, it need not address Payne's other objections to the bill of costs.

### Conclusion

For the foregoing reasons, the Court denies plaintiff's motion for a new trial [dkt. no. 140] and denies defendants' petition for costs [dkt. no. 139].

Date:  July 22, 2015